UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO M. TANORI,<br><br>           Plaintiff,<br><br>      v.<br><br>M. BITER, et al.,<br><br>           Defendants. | Case No.: 1:13-cv-01888-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br>[ECF Nos. 41, 45] |

Plaintiff Sergio M. Tanori is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

This action is proceeding against Defendants Robles and Herrera for excessive force in violation of the Eighth Amendment.

On May 21, 2015, Defendant Herrera filed a motion for summary judgment for Plaintiff's failure to exhaust the administrative remedies. On July 8, 2015, Defendant Robles joined in Defendant Herrera's motion for summary judgment, and also filed a motion for summary judgment, separate statement of undisputed facts, and request for judicial notice.[1]  (ECF Nos. 44, 45.)

---

[1] Defendant Robles' request for judicial notice of the filing of the following documents is GRANTED: (1) Defendant Herrera's notice of motion and motion for summary judgment (ECF No. 41); (2) memorandum of points and authorities in support of Defendant Herrera's motion for summary judgment (ECF No. 41-1); (3) Defendant Herrera's Rand warning (ECF No. 41-2); (4) Defendant Herrera's statement of undisputed facts in support of summary judgment (ECF No. 41-3); (5) Declaration of D. Tarnoff in support of Herrera's motion for summary judgment (ECF No. 41-4); (6) complaint (ECF

1

Although Plaintiff received two extensions of time to file an opposition, to date no opposition has been filed. Pursuant to Local Rule 230(*l*), the motions are deemed submitted for review.

## I.

## DISCUSSION

### A. Motion for Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carm en v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

///

---

No. 1); (7) Answer of Defendant H. Robles (ECF No. 38); (8) Plaintiff's response to order to show cause re: dismissal for failure to exhaust administrative remedies (ECF No. 15). (ECF No. 45-3.)

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### B.     Exhaustion under the Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings. Albino, 747 F.3d at 1170. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having

1   an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  Prior to 2011, the process
2   was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15,
3   § 3084.2(a), and appeal had to be submitted within fifteen working days of the event being appealed or
4   of the receipt of the unacceptable lower level decision, tit. 15, § 3084.6(c).  Up to four levels of appeal
5   may be involved, including the informal level, first formal level, second formal level, and third formal
6   level, also known as the Director's Level.  Tit. 15, § 3084.5.  In order to satisfy section 1997e(a),
7   California state prisoners are required to use this process to exhaust their claims prior to filing suit.
8   Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201.  On January 28,
9   2011, the inmate appeals process was modified and limited to three level of review with provisions
10  allowing the first level to be bypassed under specific circumstances.  Cal. Code Regs. tit. 15, § 3084.7.

11       "[E]xhaustion is not per se inadequate simply because an individual later sued was not named
12  in the grievances."  Jones v. Bock, 549 U.S. 199, 219 (2007).  "The level of detail necessary in a
13  grievance to comply with the grievances procedures will vary from system to system and claim to
14  claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper
15  exhaustion."  Id.  In California, the courts have previously found that CDCR guidelines do not need to
16  identify the defendants by name because the proper form and CDCR regulations do not require
17  identification of specific individuals.  See, e.g., Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).
18  However, as of January 2011, inmates are required to list all staff members involved and describe their
19  involvement, include only one issue or related set of issues per appeal, and "describe the specific issue
20  under appeal and the relief requested."  Cal. Code Regs. tit. 15, § 3084.2(a)(1)-(4) (Jan. 28, 2011).

21       **C.   Allegations of Complaint**

22       Plaintiff alleges that on January 11, 2013 at approximately 7:28 a.m. Defendants Robles and
23  Herrera were assigned to transport inmate Olivares to Bakersfield for court.  (Id. at 4.)  Plaintiff was
24  confined in a cell with inmate Olivares and Defendant Robles placed Plaintiff in handcuffs behind his
25  back and ordered him to the rear of the cell.  (Id.)  Defendant Robles then conducted an unclothed
26  body search of inmate Olivares in the cell.  (Id.)  Defendant Robles then placed inmate Olivares in
27  handcuffs and directed Defendant Arreola to open the cell door.  (Id. at 5.)
28

4

Plaintiff contends that Defendant Robles ordered inmate Olivares to back out of the cell and move to the left and inmate Olivares refused. (Id. at 6.) Defendant Robles then physically moved inmate Olivares to the left. (Id. at 7.) As the cell door was closing, Plaintiff heard Defendant Robles yell to Defendant Arreola to reopen the cell door. (Id. at 5.) Defendant Robles ran into the cell and attacked Plaintiff. (Id.) Plaintiff alleges that Defendant Robles picked Plaintiff up by the handcuffs and threw him to the cell floor and started punching and kicking Plaintiff. (Id.) Defendant Herrera assisted Plaintiff with the physical assault of Plaintiff. (Id.) Due to the alleged assault, Plaintiff sustained an abrasion, bruises, swelling, a serious head injury, and swelling to his head and face. (Id.)

Plaintiff states that Defendants Robles and Herrera should have left the cell door secured and notified the lieutenant if they suspected there was contraband in the cell. (Id. at 7.) Defendant Robles had just completed an unclothed body search of inmate Olivares and was aware that he did not possess contraband. (Id.) Plaintiff alleges that he was cooperating with Defendant Robles who lost self-control with inmate Olivares and ran back into the cell to assault Plaintiff. (Id.) Plaintiff contends that Defendants Robles and Herrera attempted to cover up their use of excessive force by falsely claiming that Plaintiff bit Defendant Herrera. (Id.) Defendant Herrera claimed to have sustained redness to his forearm as a result of being bitten by Plaintiff but they did not have DNA or other trace evidence taken. (Id. at 8.) Further, Plaintiff states that Defendants Robles and Herrera did not warn him that if he refused comply with their directive physical force would be used on him to remove him from the cell. (Id.)

Plaintiff believes that Defendants Herrera and Robles have a long history of use of excessive force on inmates at Kern Valley State Prison. (Id. at 6.)

///
///
///
///
///
///
///

**D. Statement of Undisputed Facts[2]**

1. Plaintiff Sergio M. Tanori is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) who is currently incarcerated at California Correctional Institution (CCI) in Tehachapi, California. (ECF No. 1 at 1.)

2. Plaintiff claims that on January 11, 2013, at Kern Valley State Prison (KVSP), he was subjected to excessive force by Defendants Robles and Herrera. (ECF No. 1 at 2.)

3. On the same day the alleged incident took place, Plaintiff was transferred to CCI from KVSP in Delano, California. (ECF No. 1 at 2.)

4. On January 31, 2013, Plaintiff sent a letter to the Office of Internal Affairs (OIA) stating that he was the victim of excessive force by Defendants Robles and Herrera. (ECF No. 1 at 12.)

5. Plaintiff's letter to OIA included an inmate appeal form regarding the alleged use of excessive force by Defendants Robles and Herrera. In his letter, Plaintiff asked OIA to process this inmate appeal. (Id.)

6. On March 29, 2013, Plaintiff sent a follow-up letter to OIA asking about the status of his appeal. Plaintiff did not receive a response from OIA. (Id.)

7. On April 27, 2013, Plaintiff sent a Form 22 "Inmate/Parolee Request Form" to the Appeals Coordinator at KVSP asking about the status of the appeal that he had submitted to OIA alleging excessive force by Defendants Robles and Herrera. (Id.)

8. On May 2, 2013, the KVSP Appeals Office responded to Plaintiff's Form 22, stating that "the inmate appeals office has no record of receiving an appeal submitted regarding excessive force on or about January 31, 2013." (Id.)

///

---

[2] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 56-260(b). Therefore, Defendants' statements of undisputed facts are accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

9. On May 13, 2013, Plaintiff sent a letter to the warden of KVSP containing another inmate appeal form alleging excessive force on the part of Defendants Robles and Herrera on January 11, 2013. (Id. at pp. 12-13.)

10. On May 31, 2013, Plaintiff was interviewed by the second level responder regarding his appeal. His appeal was partially granted in that it was referred to an investigator as a staff inquiry. (Id. at 13.)

11. On September 27, 2013, Plaintiff's appeal was cancelled by the third level of appeal. (Id. at 13; ECF No. 15 at 32.)

12. In his cancellation letter, J.D. Lozano, Chief of the Office of Appeals, noted that the alleged incident took place on January 11, 2013, but that Plaintiff did not file his appeal until May 13, 2013. The letter further stated that Plaintiff failed to demonstrate a legitimate reason for the delay in submitting his appeal and informed him that he could appeal the cancellation. (ECF No. 15 at 32.)

13. Each institution within the CDCR employs a designated Appeals Coordinator who, prior to accepting an appeal for review, is responsible for screening and categorizing every appeal. (Cal Code Regs. tit. 15, § 3084.5; D. Tarnoff Decl. ¶ 2.)

14. First and second level appeals must be submitted to the Appeals Coordinator to be processed. Cal. Code Regs. tit. 15, § 3084.2(c).

15. At the relevant time in this case, CDCR regulations required prisoners to submit an appeal within thirty calendar days of the event or decision being appealed, use the required form, and proceed through three levels of appeal: (1) first level; (2) second level appeal to hiring authority; and (3) third level appeal at the director's level. (Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.7, 3084.8(b); D. Tarnoff Decl. ¶ 3.)

16. Plaintiff was required to obtain a decision at the third level (Director's level) in order to fully exhaust his available administrative remedies. (Cal. Code Regs. tit. 15, § 3084.1(b).)

17. In some instances, the Appeals Coordinator will not accept an appeal for review on the merits of the inmate's complaint because the appeal is deficient under one or more criteria specified by the California Code of Regulations. For example, an appeal may be rejected, and thus, no response rendered, if it is untimely. (Cal. Code Regs. tit. 15, § 3084.6(b)(1)-(16); D. Tarnoff Decl. ¶ 3.)

7

Case 1:13-cv-01888-AWI-SAB   Document 48   Filed 10/13/15   Page 8 of 16

18. Appeals coordinators have the discretion to accept late appeals when an adequate explanation and/or documentation is provided to justify the delay. (D. Tarnoff Decl. ¶ 14.)

19. If an inmate does not provide an adequate explanation or documentation to justify a late appeal, it must be screened out. (D. Tarnoff Decl. ¶ 14.)

20. Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal. (Cal. Code Regs. tit. 15, § 3084.6(a)(5); D. Tarnoff Decl. ¶ 14.)

**E.  Analysis**

Defendants move for summary judgment on the basis that there is no reasonable dispute that Plaintiff failed to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88 (2006).

As previously stated, the State of California provides all prisoners the right to administratively appeal any departmental decision, action, condition, or policy that has an adverse effect on their welfare. Cal. Code Regs. tit. 15, § 3084.1(a). Thus, a CDCR prisoner must follow the procedures set forth in Article 8 of Title 15 of the California Code of Regulations. Woodford, 548 U.S. at 88.

At the relevant time in this case, the regulations required prisoners, such as Plaintiff, to submit an appeal within thirty calendar days of the event or decision being appealed, use the required form, and proceed through three levels of appeal: (1) first level; (2) second level appeal to hiring authority; and (3) third level appeal at the director's level. Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.7, 3084.8(b).

CDCR has set forth rules that inmates must comply with when submitting appeals, such as use of the standardized CDCR Form 602, attachment of necessary supporting documentation, and submission of the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." Cal. Code Regs. tit. 15, § 3084.5(b). The appeals coordinator may refuse to accept an appeal, and can either reject or cancel the appeal. Id. § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to

8

subsection 3084.6(c), as determined by the appeals coordinator"). Pursuant to the regulations, "a cancellation or rejection decision does not exhaust administrative remedies." Id. § 3084.1(b). When an appeal is "rejected," the appeals coordinator is required to "provide clear and sufficient instructions regarding further actions the inmate … must take to qualify the appeal for processing." Id. § 3084.6(a)(1). When an appeal is "cancelled," the prisoner "shall be notified of the specific reason(s) for the … cancellation." Id. § 3084.5(b)(3).

In the complaint, Plaintiff contends that he sent a letter and inmate appeal alleging he had been the victim of excessive force on January 11, 2013 to Special Agent Dunlop of the Office of Internal Affairs on January 13, 2013. (Compl. ¶ 68, ECF No. 1.) Plaintiff sent a follow-up letter to Agent Dunlop on March 29, 2013 requesting the status of his appeal. (Id. at ¶ 69.) It was not until April 27, 2013, that Plaintiff submitted an inmate appeal to the appeals coordinator at Kern Valley State Prison asking that the appeal sent to the Office of Internal Affairs on January 13, 2013 be processed. (Id. at ¶ 71.) Plaintiff received a response on May 2, 2013, that there was no record of any appeal being submitted on or about January 13, 2013. (Id. at ¶ 72.) Plaintiff filed an inmate appeal on May 13, 2013, and was interviewed by Defendant Seaman on May 31, 2013. (Id. at ¶ 73.) Plaintiff contends that his appeal was illegally cancelled on September 27, 2013 by Defendant Pimental. (Id. at ¶ 81.) Plaintiff alleges that the evidence clearly shows that Defendants Biter, Vera, Goss, Tyson, Marta, Lozano, Pimental, Seaman, Kunz, and Rodriguez have effectively prevented Plaintiff from timely using the available administrative remedies by falsely claiming that he did not timely process his inmate appeal. (Id. at ¶ 85.)

Defendants argue that Plaintiff appears to have chosen "this date because it was the date that Appeals Examiner R. Pimentel cancelled Plaintiff's appeal in accordance with CDCR regulations. Although Plaintiff claims that his appeal was illegally cancelled, he did not appeal the cancellation decision." Defendants further argue that Plaintiff did not offer any explanation to the KVSP Appeals Coordinator as to why his appeal was four months late, making the cancellation of his appeal proper under CDCR regulations.

In moving for summary judgment, Defendants submit the declaration of D. Tarnoff, Appeals Coordinator at KVSP. (ECF No. 41-4, D. Tarnoff Decl..) D. Tarnoff declares that every 602

received by the appeals, even those that are rejected or cancelled, is assigned a log number and tracked. (D. Tarnoff Decl. ¶¶ 5-6.) After the appeals office receives, screens, logs, and answers accepted inmate appeals, it sends a copy of the 602 appeal to case records for placement in the inmate's central file. Additionally, the original 602 is returned, along with the CDCR response, to the inmate. (Id. ¶ 7.) "All grievances, along with the CDCR's responses to them, are tracked in a computerized system called the Inmate Appeals Tracking System (IATS)." (Id. ¶ 9.) "A printout of the IATS information for a particular inmate lists all of the 602 appeals that the inmate has filed at a particular prison." (Id.)

D. Tarnoff declares that the appeals office has no record of Plaintiff submitting an appeal regarding the cancellation of his May 13, 2013 appeal. (Id. ¶ 13.)

1.  Letter to the Office of Internal Affairs dated January 31, 2013

As this Court noted in its June 30, 2014, Findings and Recommendations, the Office of Internal Affairs is not part of the inmate appeals process. (ECF No. 17 at 5.) CDCR regulations explicitly require inmates to submit appeals to the Appeals Coordinator to be processed. Cal. Code Regs. tit. 15, § 3084.5. Therefore, Plaintiff's letter and appeal sent to the Office of Internal Affairs could not have exhausted his administrative remedies, and CDCR's failure to respond to that appeal does not represent an improper screening out of his claim. See De Shazo v. Hieng, No. 1:07-cv-01258-OWW-MJS PC, 2011 WL 570263, at *4 (E.D. Cal. Feb. 15, 2011); see also Panaro v. City of North Las Vegas, 432 F,3d 949, 953 (9th Cir. 2005) (participating in Internal Affairs investigation did not exhaust administrative remedies); Wilson v. Wann, No. 2:06-cv-01629-GEB-KJM P, 2008 WL 4166886, at *2 (E.D. Cal. Sept. 8, 2008) (letter to warden and Internal Affairs does not exhaust administrative remedies).

2.  Inmate Appeal dated May 13, 2013

As previously noted, Plaintiff submitted a 602 inmate appeal on May 13, 2013, regarding an alleged use of force incident that occurred on January 11, 2013.[3] This appeal, which was submitted over four months after the alleged incident, was erroneously processed by the second level on May 31,

---

[3] Plaintiff alleges that he sent this appeal in a letter to the warden, who then chose to forward it to the Appeals Coordinator. (ECF No. 15 at 34; ECF No. 22 at 6.)

10

2013.  (ECF No. 1 at 13; ECF No. 15 at 28.)  The appeal was subsequently screened out by the third level on September 27, 2013, as untimely under Cal. Code Regs. tit. 15, § 3084.6.  The September 27, 2013, screen out letter provided Plaintiff with an opportunity to appeal the cancellation decision, but he was required to provide a legitimate reason for the delay in submitting his appeal.  (ECF No. 15 at 32.)

The administrative remedy process provides staff with the discretion to determine whether the inmate had the opportunity to submit a timely appeal and it allows staff to excuse late appeals or to reinstate cancelled appeals. (D. Tarnoff Decl. ¶ 14; Cal. Code Regs. tit. 15, §§ 3084.6(a)(3)-(4), (c)(4).)  Under CDCR regulations, Plaintiff was required to first submit his appeal within thirty calendar days of the January 11, 2013 incident, i.e. by February 10, 2013.  Cal. Code. Regs. tit. 15, § 3084.8(b).  Plaintiff's May 13, 2013 appeal was significantly late and was appropriately screened out, absent an explanation justifying the significant delay.  (ECF No. 15 at 24-27, 32.)

A cancellation decision may be challenged, § 3084.6(e), and in the cancellation letter dated September 27, 2013, Plaintiff was specifically informed in writing as follows: "Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted."  (ECF No. 15 at 32.)  Plaintiff had the opportunity to appeal this cancellation, but he failed to do so.  Plaintiff's conclusory and false assertion that his appeal was illegally cancelled is insufficient to demonstrate that CDCR improperly screened out his appeal.

If Plaintiff believed that he was justified in filing his appeal late--either because he mistakenly sent an appeal to the Office of Internal Affairs or because he was in extremely restrictive housing, as he alleges—he had multiple opportunities to explain that in his appeal, in the second-level response interview, or in his request for third level review.  As is clear from Plaintiff's exhibits, he failed to take advantage of these opportunities.  (ECF No. 15 at 24-27.)  Moreover, if Plaintiff believed that his appeal was incorrectly screened out, he could have contested that decision.  He simply chose not to do so.  (D. Tarnoff Decl. ¶ 8.)

///

11

3. <u>Alleged Efforts by Plaintiff to Exhaust Administrative Remedies</u>

Although Plaintiff did not file an opposition to the instant motion for summary judgment, Plaintiff addressed exhaustion of the administrative remedies in his complaint (ECF No. 1.), response to the court's order to show cause (ECF No. 15), and objections to the previous Findings and Recommendations (ECF No. 22). In order to properly determine whether the exhaustive remedies were exhausted by Plaintiff, the court will consider and address the content of each filing below.

On June 23, 2014, in response to the Court's order to show cause (ECF No. 11), Plaintiff alleged for the first time that he had actually submitted another appeal on January 17, 2013. (ECF No. 15 at 5.) In support of his allegation, Plaintiff submits as "exhibit A pg 7" a handwritten note on a blank sheet of paper with "602" written across the top and a recitation of the claims in this lawsuit. (<u>Id.</u> at 22.) After the Court issued a recommendation that the action be dismissed for failure to exhaust the administrative remedies, Plaintiff explained that his "exhibit A pg 7" was intended to show a "copy of the <u>rough draft</u> of what was originally written in the January 17, 2013 602 appeal" and not an exact copy of what he submitted. (ECF No. 22 at 11, emphasis in original.) Plaintiff stated that "at all times" he submitted an appropriate Form 602 appeal via regular mail to the KVSP Appeals Coordinator. (<u>Id.</u>) Plaintiff further stated that the Appeals Coordinator's failure to respond to this appeal proves that his appeals "were being mishandled, lost, or torn up," and therefore he should be exempt from the PLRA's exhaustion requirement. (<u>Id.</u> at 13.) Plaintiff further alleges that his April 27, 2013 Form 22 request asked about the status of all previous 602s submitted to the Appeals Coordinator. (<u>Id.</u> at 14.)

Plaintiff's new allegation of a missing 602 appeal mailed on January 17, 2013, is inconsistent with the remainder of his pleadings and allegations. In his complaint, filed November 21, 2013, Plaintiff set forth in great detail his alleged efforts to exhaust the administrative remedies, but he made no mention of this alleged "original" 602. (<u>See</u> ECF No. 1, Compl. at 12-14.) It is also noteworthy that despite Plaintiff's attempt to later claim otherwise, the Form 22 provided to the Court demonstrates that he only asked about the status of his 602 appeal "sent from the Internal Affairs Office on 1/31/13." (ECF No. 15 at 33.) Plaintiff has not submitted any documentation that he inquired as to the status of this alleged "original" 602 appeal.

Indeed, D. Tarnoff declares that "[e]xcept for the appeal submitted on May 13, 2013, the Appeals Office records show that Plaintiff filed only one other appeal regarding an allegation of excessive force on January 11, 2013. This appeal was received on November 5, 2013 and assigned log number KVSP-0-13-03120. This appeal was subsequently rejected and screened out to the appellant on 11-6-13. The comments section notes the following: "This is a duplicate of appeal log #KVSP-O-13-01318 which was completed and cancelled by Third level on 10-7-13. Requested copies may be obtained through your assigned CCI." (D. Tarnoff Decl. ¶ 15.)

In any event, even if it is assumed that Plaintiff actually mailed an appeal on January 17, 2013, regarding his claims at issue in the instant action, Plaintiff has provided nothing more than bare conclusory assertions that CDCR officials refused to respond to this appeal, or that they even actually received such appeal. In addition, there is no record of Plaintiff submitting any appeal regarding his allegations in this case prior to the cancelled May 13, 2013, appeal. (D. Tarnoff Decl. ¶ 15; Ex. A.) Furthermore, there is an absolute lack of authentication for Plaintiff's handwritten duplicate copy of the 602 inmate appeal he allegedly written on January 17, 2013.

"'Unauthenticated documents cannot be considered in a motion for summary judgment,'" and "[t]he authentication of a document requires 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532-533 (9th Cir. 2011) (quoting Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Evid. 901(a)). An inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility. Orr, 285 F.3d at 776. Rule 901 of the Federal Rules of Evidence provides that evidence may be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. Evid. 901(b)(4), and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285 F.3d at 778 n.24) (quotation marks omitted).

Courts generally view objections based on authentication skeptically in the absence of an indication that the document's authenticity is genuinely in dispute, Chamberlain v. Les Schwab Tire Center of California, Inc., No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal. Dec. 3,

2012); Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1120-1121 (E.D. Cal. 2006), and objections to prison records which are clearly what they purport to be are routinely overruled under Rule 901(b)(4), see, e.g., Thomas v. Quintana, No. CV 10-2671-JGB (CWX) (official Bureau of Prisons logs and records maintained in the ordinary course of business); Howard v. Wang, No. 1:10cv01783 AWI DLB PC, 2014 WL 3687728, at *3 (E.D. Cal. Jul. 24, 2014) (prison records maintained in inmate's central and medical files), findings and recommendations adopted in full, 2014 WL 5483739 (E.D. Cal. Nov. 19, 2014); Abdullah v. CDC, No. CIV S-06-2378 MCE JFM P, 2010 WL 4813572, at *3 (E.D. Cal. Nov. 19, 2010) (finding no objection for lack of foundation and authentication unavailing where the records were from the plaintiff's prison file and they were created and maintained by prison officials), findings and recommendations adopted in full, 2011 WL 489599 (E.D. Cal. Feb. 7, 2011); Sanchez v. Penner, No. CIV S-07-0542 MCE EFB P, 2009 WL 3088331, at *5 (E.D. Cal. Sept. 22, 2009) (overruling lack of foundation and proper authentication objections to prison medical records submitted by the plaintiff).

In this case, however, Plaintiff admittedly presents a handwritten "rough draft" copy (on a blank sheet of paper) of an inmate appeal he claims to have written on January 17, 2013. The handwritten copy of the 602 does not contain any indicia of official receipt or other distinctive characteristics sufficient to support a finding that it is what it purports to be. There is no way for the Court to determine (and Plaintiff does not provide any detail) as to when and how the 602 inmate appeal form was submitted. Plaintiff merely contends in conclusory fashion that "at all times" he submitted an appropriate Form 602 appeal via regular mail to the KVSP Appeals Coordinator. (ECF No. 22 at 11.) Documents may be authenticated through personal knowledge where they are attached to an affidavit and the affiant is a competent witness who wrote the document, signed it, used it, or saw others do so. Fed. R. Evid. 901(b)(1); Las Vegas Sands, LLC, 632 F.3d at 553 (citing Orr, 285 F.3d at 773.) Moreover, Plaintiff's competence to testify about matters within his personal knowledge may be inferred from his declaration. Strong v. Valdez Fine Foods, 724 F.3d 1042, 1045 (9th Cir. 2013); Barthelemy v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam). In this instance, Plaintiff has failed to lay an adequate foundation to authenticate the handwritten rough draft copy of the inmate appeal. Even considering the leniency to Plaintiff is entitled given his pro set

status, Plaintiff's filing contains only bare assertions that "at all times" he submitted an appropriate Form 602 appeal (written on January 17, 2013) via regular mail to the KVSP Appeals Coordinator. (ECF No. 15 at 5; ECF No. 22 at 11.) Plaintiff further stated that the Appeals Coordinator's failure to respond to this appeal proves that his appeals "were being mishandled, lost, or torn up," and therefore he should be exempt from the PLRA's exhaustion requirement. (Id. at 13.) There are no facts as to the date on which he allegedly submitted the original appeal form, how he submitted the form, to whom he submitted the form, and the rough draft handwritten copy completely lacks any indicia of genuineness, as previously discussed herein. Plaintiff's conclusory contentions and arguments are insufficient to meet his burden of producing evidence showing that his administrative remedies were rendered effectively unavailable to him by the actions of prison officials. Accordingly, Defendants' motion for summary judgment should be granted.

II.

RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants Herrera and Robles' motions for summary judgment be GRANTED; and
2. This action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

///
///
///
///
///
///

may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 13, 2015**

UNITED STATES MAGISTRATE JUDGE